————o————

No. 5622.

## ANNA E. BURNS, WIFE OF GEO. A. SHANE vs. MARY L. ALLEN.

### Syllabus.

Involves only issues of fact.

Appeal from the Civil District Court for the Parish of Orleans, Division "D," No. 96,834. Hon Porter Parker, Judge.

Chas. F. Starkey, for plaintiff and appellant.

J. Armstrong, for defendant and appellee.

His Honor, JOHN ST. PAUL, rendered the opinion and decree of the Court as follows:

This is an action to set aside a sale of real estate from plaintiff to defendant on the ground of fraud, error and want of consideration, and from a judgment adverse to her pretensions plaintiff appeals.

She alleges in substance that being under the influence and control of defendant and defendant's mother, her

aunt and first cousin, and having confidence in their integrity and good will toward herself, and relying thereon, she was induced by them to repair to a notary's office, and there persuaded to sign a written instrument which was not read to her, for which she received no consideration, and of whose contents, purpose and effect she was then wholly ignorant.

That she subsequently learned that said writing purported to be a sale of the property in controversy, by herself to her cousin the defendant, for an alleged cash price of $800, and she then learned for the first time that she ever had any interest in said property, having been kept in ignorance of her said right by her aunt and cousin aforesaid and led by them to believe that the property in question had always belonged to them.

The defendant tendered the general issue.

The evidence herein shows that plaintiff's mother died when she was about 16 months old, and that her father (who was defendant's uncle), went to reside with his sister, defendant's mother, but left the child with her maternal grandmother. That the grandmother died when the child was about 12 years old, whereupon the father took his child to reside with him at his sister's home. That at her grandmother's death the minor came into possession of this piece of real estate, of which her father had the administration as her natural tutor. That her father died when plaintiff was about 17 years old, and plaintiff continued to reside with her aunt and cousin until she left their home in the spring of 1905, being then about 24 years of age. That the act of sale herein attacked was executed on October 3, 1904, plaintiff being then nearly 23 years of age.

This suit was filed in April, 1911, or more than six years after the signing of the act; and plaintiff testifies that during all the time that her father lived, during all the

time she continued to reside with her aunt, and for nearly six years after she left the latter's home, she was in ignorance of the fact that she ever had any interest in the property; that she signed the deed in the notary's office without its being read to her, and without any knowledge of its contents, because her aunt and cousin asked her to do so and she did not think they would do her any wrong.

The District Judge, who saw and heard the witnesses, evidently did not believe her. To us her testimony, even if uncontradicted, appears incredible. But it is contradicted not only by defendant but by disinterested witnesses.

It is shown that during the life of her father she went with him repeatedly to collect the rent, and whilst that alone might not indicate that the property was her own, it would certainly indicate to a girl nearly 17 years of age, that her father at least had some claim upon, or interest of some sort in the property, to which she might succeed on his death; sufficient at least to put her on inquiry. Moreover, there is testimony showing that her ownership of the property was spoken of in her presence by her father, notably in discussing the provisions of her grandmother's will, by which she left the greater part of her estate to one Mrs. Carey. And it is also shown (Mrs. Forester, p. 18), that about a year after she left her aunt's house she went to live with this Mrs. Carey, who had lived in the same house with her grandmother and herself; who had been the principal beneficiary under her grandmother's will; and with whom it was natural that she should have discussed her grandmother's property.

And the testimony of Mr. Schneidau the notary, and of Mr. Armstrong the attorney who directed the confection of the act, satisfies us that the aunt herself was not even present when the act was signed; that it was read to plaintiff before she signed it, and that she therefore well

knew what she was doing and was in no manner induced or persuaded by any one, but acted of her own free will.

We, therefore, attach no weight to the alleged matters of fraud and error.

But it is admitted that the cash price ($800) recited in the deed was not paid at the time and hence the inquiry presents itself whether or not the contract may still stand notwithstanding that fact.

The Code provides that a contract made without consideration can have no effect (C. C., 1893), but on the other hand a contract none the less valid even though the consideration therein expressed be not the true one, provided a real and sufficient consideration can be shown. (C. C., 1900.)

And the evidence satisfies us, as it did the District Judge, that there was a true and sufficient consideration for the transfer of the property, apart from the cash payment recited in the deed.

It is shown affirmatively that about six months before the sale defendant paid about $190 of back taxes upon the property, and lent plaintiff money to pay a mortgage upon it amounting to something like $120; or some $310, in all.

And defendant swears that in addition to this she had advanced to plaintiff at different times, various sums aggregating with the $310 above stated, a total of more than $800 of which both she and plaintiff had an itemized detailed account at the time. That she herself had kept this account for more than five years after the sale and until about a year before the bringing of this suit, when it was destroyed as having no longer any value.

It is true plaintiff denies all such advances, but the District Judge believed the defendant, and so do we, and believing, as we do, that plaintiff well knew what she was doing when she signed the deed, we do not think that she

— 39 —

should at this late day be permitted to reopen and demand the particulars of an account which that transaction was intended to close.

Were this permissible, the accounts between individuals, even though closed and discharged, would never be at rest; and no one could even feel secure who took property instead of cash in settlement of an account or indebtedness of any kind.

Judgment affirmed.

Opinion and decree, November 11th, 1912.